IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

BASSETT SEAMLESS GUTTERING, )
INC., a North Carolina )
corporation, )
 )
    Plaintiff, )
 )
    v. ) 1:05CV00184
 )
GUTTERGUARD, LLC, a Delaware )
corporation, )
GUTTERGUARD, INC., a Georgia )
corporation, f/k/a GutterGuard )
of North Carolina, Inc., )
DIXIE HOMECRAFTERS, INC., a )
Georgia corporation, )
 )
    Defendants. )

AMENDED[1]
<u>MEMORANDUM OPINION AND ORDER</u>

OSTEEN, District Judge

    Plaintiff Bassett Seamless Guttering, Inc. is a North Carolina corporation primarily engaged in the business of selling and installing gutter replacement systems. GutterGuard, Inc., GutterGuard, LLC, and Dixie HomeCrafters, Inc. (collectively, "Defendants") are Georgia and North Carolina corporations which also sell gutter replacement systems in North Carolina. All parties are licensed to sell components manufactured by K-Guard, LLC ("K-Guard"). Plaintiff filed suit against Defendants claiming, inter alia, that Defendants tortiously interfered with

---

    [1] See correction to the court's order on page 19.

Plaintiff's contract with K-Guard causing Plaintiff to lose its exclusive rights to market and sell K-Guard gutter systems in certain areas.  Now before this court are Defendants' Motion for Summary Judgment and Amended Motion for Partial Summary Judgment.

I.   FACTUAL BACKGROUND

Since Defendants moved for summary judgment, the following facts are viewed in a light favorable to Plaintiff.  Plaintiff is engaged in the gutter business and operates under an exclusive license with K-Guard to sell the K-Guard gutter system in certain designated territories in North Carolina.  As part of Plaintiff's contract with K-Guard, Plaintiff agreed to purchase a certain amount of equipment and complete a certain level of sales in exchange for the exclusive rights to sell the K-Guard gutter system in a designated territory.  Despite fulfilling all the conditions required to earn an exclusive sales territory, Plaintiff encountered Defendants selling the same K-Guard gutter systems in an area supposedly reserved exclusively for Plaintiff. As a result of Defendants' activities, Plaintiff brought this suit for tortious interference with contract and prospective business opportunity, violation of the Lanham Act, and unfair and deceptive trade practices.[2]

---

[2] Plaintiff's complaint involved additional allegations against other parties.  Those claims, however, were dismissed on
(continued...)

## II. LEGAL STANDARD

Summary judgment is appropriate where an examination of the pleadings, affidavits, and other proper discovery materials before the court demonstrates that no genuine issues of material facts exist, thus entitling the moving party to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552 (1986). If the moving party has met that burden, then the nonmoving party must persuade the court that a genuine issue remains for trial.

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial."

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356 (1986) (citations & footnote omitted) (quoting Fed. R. Civ. P. 56). In considering a motion for summary judgment, the court is not to weigh the evidence, but rather must "determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S. Ct. 2505, 2511 (1986). The court must view the facts in the light most favorable to the nonmovant, drawing inferences favorable to that party if such inferences are reasonable. Id. at 255, 106 S. Ct. at 2513. However, there must be more than a

---

[2](...continued)
account of a forum selection clause.

factual dispute; the fact in question must be material, and the dispute must be genuine. Fed. R. Civ. P. 56(c); <u>Anderson</u>, 477 U.S. at 248, 106 S. Ct. at 2510. A dispute is only "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id.</u>

**III. ANALYSIS**

Plaintiff filed suit against Defendants claiming that: (1) Defendants intentionally induced K-Guard to breach its contract with Plaintiff, (2) Defendants tortiously interfered with Plaintiff's prospective contracts by selling the K-Guard product in a geographic territory where Plaintiff claims to have the exclusive right to sell it, (3) Defendants' marketing practices with respect to its gutter system constitute false designation of origin and false advertising under the Lanham Act, (4) Defendants' marketing and selling practices are unfair and deceptive trade practices in violation of North Carolina law, and (5) Defendants and K-Guard engaged in a civil conspiracy causing injury to Plaintiff.

**A. Tortious Interference with Contract**

Plaintiff argues that Defendants induced K-Guard to alter the interpretation of its licensing agreement and breach its contract with Plaintiff in order to allow Defendants access to Plaintiff's exclusive territory. In order to set forth a prima facie case of tortious interference with contract, a plaintiff

4

must show the following elements: (1) a valid contract existed between the plaintiff and a third party; (2) the defendant knew of the contract; (3) the defendant intentionally induced the third party to breach or not perform the contract; (4) the defendants acted without justification; and (5) the plaintiff suffered damages. <u>United Laboratories, Inc. v. Kuykendall</u>, 322 N.C. 643, 661, 370 S.E.2d 375, 387 (1988).

In this case, there is sufficient evidence to raise a question of fact as to whether a contract existed between K-Guard and Plaintiff that would prevent Defendants from selling their gutter system in Plaintiff's exclusive territory.[3] Defendants argue, however, that Plaintiff's claim should fail because there is no evidence that Defendants induced K-Guard to breach its contract with Plaintiff.

The question for this court, therefore, is whether an issue of material fact exists that could cause a reasonable juror to find that Defendants intentionally induced K-Guard to alter the interpretation of its license agreement. The term "induce" is defined in the Restatement (Second) of Torts as "refer[ring] to

---

[3] The court reaches this conclusion by taking notice of the jury verdict in the Boulder County District Court (State of Colorado) in the matter of <u>Bassett Seamless Guttering, Inc. v. K-Guard, LLC</u>, 2006CV101, where the jury concluded that K-Guard breached the temporary exclusive territory clause of the contract between the parties. (Defs.' Br. Supp. Am. Mot. Partial Summ. J. Ex. D.) Accordingly, sufficient facts are present that would lead a reasonable juror to conclude that a valid contract existed.

5

the situations in which A causes B to choose one course of conduct rather than another." Restatement (Second) of Torts § 766, cmt. h. It is also defined as "[t]o bring on or about, to affect, cause, to influence to an act or course of conduct, lead by persuasion or reasoning, incite by motives, prevail on." Black's Law Dictionary 775 (6th ed. 1990). Essential to the definition of induce is an act that would cause one party to choose one course of conduct rather than another.

Plaintiff argues that K-Guard was influenced by the desire to keep its largest source of revenue[4] happy and acted in a manner that allowed Defendants to operate in the exclusive territory of other licensees. Assuming all the facts alleged by Plaintiff are true, the evidence only demonstrates that Defendants sought a clarification on the types of restrictions that the exclusive territory clause imposed. While K-Guard may have been motivated by selfish reasons to interpret its exclusive territory clause in an inherently contradictory manner, there is no evidence that this was done at Defendants' behest. Plaintiff offered no credible evidence to the contrary. Accordingly, the court will grant Defendants' motion with respect to this claim.

**B. Interference with Prospective Economic Advantage**

---

[4] According to Plaintiff, Defendants constituted 60% of K-Guard's annual revenues.

Defendants challenge Plaintiff's claim for tortious interference with prospective economic advantage on the grounds that North Carolina law does not recognize this cause of action, and that even if it did, Plaintiff failed to show Defendants acted without justification. Despite Defendants' contention to the contrary, North Carolina law does allow for claims of tortious interference with prospective economic advantage. See Owens v. Pepsi Cola Bottling Co., 330 N.C. 666, 680, 412 S.E.2d 636, 644 (1992) (Under North Carolina law, "unlawful interference with the freedom of contract is actionable.") (citation omitted). In fact, tortious interference with contract is actionable "whether it consists in maliciously procuring breach of a contract, or in preventing the making of a contract when this is done, not in the legitimate exercise of defendant's own right, but with design to injure the plaintiff, or gaining some advantage at his expense." Id. (citation omitted). In order to establish a claim for tortious interference with prospective economic advantage, a plaintiff must show that the defendant lacked "justification for inducing a third party to refrain from entering into a contract with [the plaintiff] which contract would have ensued but for the interference." Cameron v. New Hanover Mem'l Hosp., Inc., 58 N.C. App. 414, 440, 293 S.E.2d 901, 917 (1982) (citation omitted).

7

This case presents a unique situation to the court because the general jurisprudence in this area has not sufficiently developed to fit the facts of this case. Here, Plaintiff arguably possessed a contractual right to exclusively market and sell K-Guard gutter materials in a specific territory. Certainly such a right is, by definition, a prospective economic advantage. In essence, Plaintiff is guaranteed the economic advantage of operating without fear of competing businesses diluting the market with K-Guard gutter systems. Plaintiff, therefore, has a potential business opportunity with every customer who desires to purchase the patented leaf-free gutter.

Defendants were aware or should have been aware of Plaintiff's economic advantage in the exclusive territory. The contract between K-Guard and its licensees provides that K-Guard will grant a "temporary exclusive territory" to licensees where K-Guard would not "license the use of the Mark or the marketing or installation of the K-Guard gutter system and hangers to any person or entity known to Licensor to be located in the [exclusive] Territory." (Defs.' Br. Supp. Am. Mot. Partial Summ. J. Ex. A at 3.) As licensees of K-Guard, Defendants had knowledge of this clause in the contract. Though this clause

certainly has room for interpretation, it raises a question of material fact as to whether it grants an exclusive territory.[5]

Despite the potential existence of an exclusive territory, Defendants marketed the K-Guard system in Plaintiff's region with the intent to put Plaintiff out of business. Defendants' actions were designed to obtain the rights to operate in this area by force because the opportunity to secure them through K-Guard was not possible. This action was arguably motivated by interests beyond lawful competition. As such, a genuine issue of material fact exists as to whether Defendants acted without justification.

Generally to survive summary judgment, a plaintiff must offer evidence that a defendant directly interfered with a prospective contract between the plaintiff and an identifiable third party. See McElmurry v. Alex Fergusson, Inc., 2006 U.S. Dist. LEXIS 10760 (M.D.N.C. 2006) ("Plaintiff's mere expectation of future contracts with [potential customers] is not enough to maintain a tortious interference with prospective advantage claim.") (citing DaimlerChrysler Corp. v. Kirkhart, 148 N.C. App. 572, 585, 561 S.E.2d 276, 286 (2002)). The fact that this court previously referenced this rule in an unpublished case, however, does not necessarily mean it has strict applicability. In extraordinarily limited situations, as the one faced by the court

---

[5] In fact, the jury in the Colorado proceeding concluded that this did convey to Plaintiff an exclusive territory.

in this case, where an exclusive sales territory is disputed, the rule may apply in a more wide-ranging fashion.

Plaintiff has not presented the court with an identifiable individual whose name and address are readily discernable. Where Plaintiff's economic advantage exists in the form of an exclusive sales territory, however, Plaintiff may need only to demonstrate that others in its territory purchased the same good from an infringing party. See, e.g., Nat'l Micrographics Sys., Inc. v. OCE-Indus., Inc., 55 Md. App. 526, 465 A.2d 862 (1983). In National Micrographics Systems, the court held that "it is no defense to say that the plaintiff, who had an exclusive territory under the contract, would not have made the sales." Id., 55 Md. App. at 538, 465 A.2d at 870. The court reasoned that in such cases where an exclusive territory contract is the basis for a complaint, that "[t]here is nothing speculative or uncertain as to the amount of profits of which plaintiff was thus deprived." Id. (citation omitted). Since Plaintiff has presented evidence that Defendants made sales in their exclusive region, summary judgment on this claim is inappropriate.[6]

---

[6] The court's conclusion on this claim comports with the basic theory of tortious interference that "[a]ny act or omission which unjustifiably disturbs or impedes the enjoyment of such right [prospective economic advantage] constitutes its wrongful invasion, and is properly treated as tortious." Gilette Foods, Inc. v. Bayernwald-Fruchterverwertung, GmbH, 1988 U.S. Dist. LEXIS 4334 (D. N.J. 1988).

10

It is important for this court to note that this issue of law places the court in an area of uncharted waters. Though this court believes that it should not grant summary judgment, it by no means desires to bootstrap the trial judge with a binding precedent. Instead, the court's conclusion in this matter should be read to mean only that there are issues remaining in this case that are more appropriate for the trial judge to decide during trial.

### C. Lanham Act Violations - False Designation and Advertising

Plaintiff contends that Defendants' use of the K-Guard gutter materials while marketing the product as its own constitutes false advertising and false designation of origin under the Lanham Act.[7] The Lanham Act prohibits a "false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities." 15 U.S.C. § 1125(a) (2007). In order to establish a claim under this section, a plaintiff must show that:

---

[7] Defendants also claim that Plaintiff is barred from raising this argument based on the doctrine of unclean hands. The fact that Plaintiff marketed its product in another's territory does not prevent it from pursuing a false designation or false advertising claim. Instead, Defendants would have the burden of proving that Plaintiff's marketing and advertising were also false. Defendants have not met that burden.

11

> (1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

Scotts Co. v. United Indus. Corp., 315 F.3d 264, 272 (4th Cir. 2002).

The first inquiry to be made, therefore, is whether Defendants' representation was false or misleading.[8] In order to be liable under the Lanham Act, "the contested statement or representation must be either false on its face or, although literally true, likely to mislead and to confuse consumers given the merchandising context." Id. at 273 (citing C.B. Fleet Co. v. SmithKline Beecham Consumer Healthcare, L.P., 131 F.3d 430, 434 (4th Cir. 1997)). In situations "[w]here the advertisement is literally false, a violation may be established without evidence

---

[8] Defendants cite to an unpublished case for authority that the Lanham Act does not apply to matters involving the ownership of patents. See digiGAN, Inc. v. iValidate, Inc., 2004 U.S. Dist. LEXIS 1324 (S.D.N.Y. 2004). The court in digiGAN, however, held only that a plaintiff could not use the Lanham Act as a basis for a claim against a party who made misrepresentations concerning the ownership of a patent because a patent is not a good or service within the meaning of the Lanham Act. Id. In this case, Plaintiff is concerned about the misrepresentations regarding the GutterGuard system, which is a good, and not a patent.

12

of consumer deception." Id. (citation and internal quotations omitted).

Here, Defendants represented that its gutter system was its own patented design.  Defendants' ads for the GutterGuard system used phrases like "our patented system," "the patented GutterGuard system," "patented Dixie GutterGuard," and "[b]ut only one is the patented two-channel system from GutterGuard." (Pl.'s Mem. Opp'n Defs.' Mot. Summ. J. Revised Ex. M at 1, 23-25, 173.)  Defendants, however, do not own a patent on the GutterGuard system, making their representation potentially false on its face.  Defendants maintain that though the GutterGuard system was marketed as a patented system, this would be misleading at best because certain components were patented. This dispute raises an issue of material fact as to whether Defendants' advertisements were literally false.  The court, therefore, does not need to engage in a further analysis of the other elements of the Lanham Act claim.  C.f. Pediamed Pharms., Inc. v. Breckenridge Pharm., Inc., 419 F. Supp. 2d 715, 731 (D. Md. 2006) (The court found that upon deciding an issue of material fact exists in relation to whether advertising statements were literally false, that a Lanham Act claim survives summary judgment and a further analysis of the remaining elements

13

is no longer necessary.). Accordingly, Defendants' motion for summary judgment will be denied on this claim.[9]

---

[9] Defendants call into question Plaintiff's standing to bring a claim under the Lanham Act. Standing, however, is not an issue because Plaintiff is both a competitor and a party who believes to be injured by Defendants' actions. See Joint Stock Soc'y v. UDV N. Am., Inc., 266 F.3d 164 (3rd Cir. 2001) (competitor has standing to sue); Thorn v. Reliance Van Co., 736 F.2d 929 (3rd Cir. 1984). Moreover, Plaintiff is not claiming a trademark infringement claim, but rather a claim for false advertising under 15 U.S.C. § 1125(a).

14

**D. Unfair and Deceptive Trade Practices**

Plaintiff claims that Defendants violated the Unfair and Deceptive Trade Practices Act ("UTPA"), N.C. Gen. Stat. § 75.1-1, by interfering with Plaintiff's contract with K-Guard, making false and defamatory statements about Plaintiff's business, and misrepresenting Defendants' product. Under the UTPA, "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. Gen. Stat. § 75.1-1(a) (2006). In order to establish a prima facie case of a violation of the UTPA, a party must prove: "(1) an unfair or deceptive act or practice . . . , (2) in or affecting commerce, and (3) which proximately caused actual injury to the plaintiff or his business." Wysong & Miles Co. v. Employers of Wausau, 4 F. Supp. 2d 421, 433 (M.D.N.C. 1998) (citation and internal quotations omitted). "[U]nder [the UTPA], it is a question for the jury as to whether the defendants committed the alleged acts, and then it is a question of law for the court as to whether these proven facts constitute an unfair or deceptive trade practice." United Laboratories, 322 N.C. at 664, 370 S.E.2d at 389 (citing Hardy v. Toler, 288 N.C. 303, 218 S.E.2d 342 (1975)).

The first question for the court, therefore, is whether Defendants' acts, if committed, would constitute an unfair or deceptive trade practice. This determination "usually depends

15

upon the facts of each case and the impact the practice has in the marketplace." Lapierre v. Samco Dev. Corp., 103 N.C. App. 551, 557, 406 S.E.2d 646, 649 (1991) (citation omitted). The UTPA does not define "unfair methods of competition," but courts have interpreted this term as "encompass[ing] any conduct that a court of equity would consider unfair." Polo Fashions, Inc. v. Craftex, Inc., 816 F.2d 145, 148 (4th Cir. 1987) (citing Harrington Mfg. Co. v. Powell Mfg. Co., 38 N.C. App. 393, 248 S.E.2d 739 (1978)). Likewise, a practice is unfair "if it is unethical or unscrupulous, and it is deceptive if it has a tendency to deceive." Id. (citing Marshall v. Miller, 302 N.C. 539, 276 S.E.2d 397, 403 (1981)); see also Lapierre, 103 N.C. App. at 557, 406 S.E.2d at 649 ("A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.") (citation omitted).

Plaintiff's allegations that Defendants engaged in acts of false advertising are of the type that would constitute unfair and deceptive acts within the meaning of the UTPA. See State ex rel. Edmisten v. J. C. Penney Co., 292 N.C. 311, 318, 233 S.E.2d 895, 899-900 (1977) ("Cases involving unfair or deceptive practices include false advertising, misnaming and misrepresentation, misleading trade or products names, [and]

16

simulation of well known products or trade names.") (citation omitted).

Defendants argue that Plaintiff has not raised an issue of material fact that would allow this court to deny their motion for summary judgment. As discussed above, however, Plaintiff has presented sufficient evidence that would allow a jury to reach a conclusion that Defendants engaged in unfair and deceptive acts. Accordingly, the court will deny Defendants' motion as to the UTPA claim.[10]

**E. Civil Conspiracy**

Defendants contend that Plaintiff's claim for civil conspiracy fails as a matter of law because there is no evidence of an agreement between Defendants and K-Guard. In order to establish a prima facie case of a civil conspiracy, a party must show the existence of an agreement between two or more persons to do an unlawful act or to do a lawful act in an unlawful way that results in damage to the claimant. See Dalton v. Camp, 138 N.C. App. 201, 213, 531 S.E.2d 258, 266 (2000), Carter v. Fed. Bureau of Prisons, 2007 U.S. Dist. LEXIS 19867 (D. W. Va. 2007) (citing Scherer v. Balkema, 840 F.2d 437, 442 (7th Cir. 1988)).

---

[10] As for damages, there is reason to believe that some of Defendants' customers would have purchased Plaintiff's gutter system if they had known it was the same since Plaintiff sold it for a lower price. See Pl.'s Mem. Opp'n Defs.' Mot. Summ. J. Ex. I at 29.

17

In this case, Plaintiff fails to offer proof that an agreement existed between Defendants and K-Guard that would support a civil conspiracy claim. Though Plaintiff claims that Defendants induced K-Guard to alter its interpretation of the exclusive territory clause, no evidence is produced that there was a common scheme or agreement between the parties to adopt this interpretation. At best, Plaintiff can only show that K-Guard sent a letter containing its interpretation of the clause after Defendants sought a clarification of their rights as a licensee. Since this is not sufficient to establish agreement, the court will grant Defendants' motion for summary judgment on this claim.

**IV. DEFENDANTS' AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendants submitted an amended motion for summary judgment in light of a jury verdict in the case between K-Guard and Plaintiff that went before the Boulder County District Court in Colorado. A close analysis of the verdict allows this court to draw only one conclusion, that the contract between K-Guard and Plaintiff at one time allowed Plaintiff to have an exclusive territory that prevented any other licensees from operating in the same area. Since the court was able to conclude that Defendants were not liable for tortious interference with an existing contract, the amended motion will be denied as moot as to this claim.

The court also concluded that Defendants faced potential liability on the tortious interference with prospective economic advantage claim. Though the conclusion on this matter leaves the issue for trial, the court reiterates its desire to preserve the right of the trial judge to make a final determination as to the applicability of the Colorado decision on this claim. For this reason, the court will deny summary judgment at this time.

V.  CONCLUSION

For the reasons stated above,

IT IS ORDERED that Defendants' Motion for Summary Judgment [48] is DENIED IN PART and GRANTED IN PART.

Defendants' motion with respect to the Unfair and Deceptive Trade Practices Act, tortious interference with prospective economic advantage, and Lanham Act claims is DENIED.

Defendants' motion with respect to the claims for tortious interference with contract and civil conspiracy is GRANTED.

IT IS FURTHER ORDERED that Defendants' Amended Motion for Partial Summary Judgment [63] is DENIED.

This the 13th day of July 2007.

/s/ William L. Osteen
United States District Judge